IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RAFAEL BAILEY                                                                                          PLAINTIFF

VERSUS                                                          CIVIL ACTION NO.: 2:20-cv-00016-KS-MTP

FORREST COUNTY, MS                                                                                DEFENDANT

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Comes now Plaintiff, Rafael Bailey, by and through counsel, and respectfully submits this Response in Opposition to Defendant's Motion for Summary Judgment, and states as follows:

**Background**

This case involves a claim by Mr. Bailey to recover damages for violations of his rights under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). *See generally*, Compl. (May 29, 2019) (Doc. 1). Mr. Bailey was employed by Defendant, Forrest County, Mississippi, as a deputy with the Forrest County Sheriff's Office ("FCSO") since 2010. Bailey Deposition 17:2-4 (Oct. 6, 2020) (Mot. Summ. J. Ex. A) (Doc. 23-1) (hereinafter, "Bailey Dep."). During the time he was employed by FCSO, Mr. Bailey was also a member of the Mississippi Army National Guard ("MSARNG"). *See id.* at 17:2-10. In 2014, Mr. Bailey was assigned to the U.S. Department of Justice, Drug Enforcement Administration's High Intensity Drug Trafficking Area ("HIDTA") Task Force. *Id.* at 32:3-5. Even though he was assigned to the HIDTA Task Force, Mr. Bailey remained an employee of FCSO. *See* Bailey Dep. at 96:7-11.

In January 2018, Mr. Bailey was ordered to active military duty overseas, beginning in April 2018, for a period of approximately thirteen months. *See* Orders 27-030-0095 (Jan. 30, 2018) (Bailey Declaration Ex. 1-A) (Exhibit 1) (hereinafter, "Bailey Decl."). However, he had to return

early because of medical issues, and his orders were terminated on November 1, 2018. Bailey Dep. 49:16-50:6. When he returned to the United States, Mr. Bailey advised FCSO that he would like to return to work at the end of October 2018. *Id.* at 50:12-51:6; McGee Affidavit ¶ 6 (Dec. 10, 2020) (Mot. Summ. J. Ex. F) (Doc. 23-6) (hereinafter, "McGee Aff.). At a meeting prior to his reemployment, Mr. Bailey was informed that he would not be returning to the HIDTA Task Force, but that he would have a job with FCSO. McGee Aff. at ¶¶ 7-8. However, the position in which Mr. Bailey was placed after he returned from his active military service paid less than what he earned on the HIDTA Task Force. *See* Bailey Dep. 62:21-63:5. *See also*, Forrest Cnty. Payroll Rep. (Bailey Decl. Ex. 1-B); Bailey Personnel File, Forrest Cnty. Payroll Gross Wages Distrib. Rep. (Mot. Summ. J. Ex. B pp. 1-5) (Doc. 23-2). As such, Mr. Bailey was not reemployed in a position of like seniority, status, and pay, as required by USERRA. *See* 38 U.S.C. § 4313.

## Applicable Law

**1. Summary Judgment**

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P.56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020) (quoting *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017) (internal quotation marks and citation omitted). All facts and reasonable inferences are construed in favor of the non-movant, and the court should not weigh evidence or make credibility findings. *Id.* (citing *Deville v. Marcantel*, 567 F.3d 156, 163-64 (5th Cir. 2009)). The resolution of a genuine issue of material fact "is the exclusive province of the trier of fact and may not be decided at the

summary judgment stage." *Id.* (quoting *Ramirez v. Landry's Seafood Inn & Oyster Bar*, 280 F.3d 576, 578 n.3 (5th Cir. 2002)).

**2. USERRA**

USERRA generally provides that

> [a] person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

38 U.S.C. § 4311(a). Any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of USERRA. *Id.* at § 4312(a). Upon completion of a period of service in the uniformed services, a person entitled to reemployment under 38 U.S.C. § 4312 shall be promptly reemployed "in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, or a position of like seniority, status and pay, the duties of which the person is qualified to perform." *Id.* at § 4313(a)(2)(A). Further,

> [a] person who is reemployed under this chapter is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed.

*Id.* at § 4316(a). "[T]he starting point for determining the proper reemployment position is the escalator position, which is the job position that the employee would have attained if his or her continuous employment had not been interrupted due to uniformed service." 20 C.F.R. § 1002.192. "The reemployment position may be either the escalator position; the pre-service position; a position comparable to the escalator or pre-service position; or, the nearest approximation to one

of these positions." *Id.* "The reemployment position includes the seniority, status, and rate of pay that an employee would ordinarily have attained in that position given his or her job history, including prospects for future earnings and advancement." *Id.* at § 1002.193. "The employer may not [] refuse to reemploy the employee on the basis that another employee was hired to fill the reemployment position during the employee's absence, even if reemployment might require the termination of that replacement employee." *Id.* at § 1002.139(a). In any action under USERRA, the court may award the employee compensation for any loss of wages or benefits suffered by reason of the employer's failure to comply with USERRA. 38 U.S.C. § 4323(d)(1)(B). In addition, the court may award an amount equal to the amount of lost wages or benefits, as liquidated damages, if the court determines that the employer's failure to comply with USERRA was willful. *Id.* at § 4323(d)(1)(C). A violation of USERRA is willful "if the employer either knew or showed reckless disregard for whether its conduct was prohibited by the Act." 20 C.F.R. § 1002.312(c).

## Argument

Forrest County contends that it did not violate Mr. Bailey's USERRA rights and is entitled to summary judgment because: (1) it did not have control over Mr. Bailey's employment; (2) it had a legitimate non-discriminatory reason for removing Mr. Bailey from the HIDTA Task Force; (3) Mr. Bailey was reemployed in a position of like seniority, status, and pay; and (4) Mr. Bailey has no damages. *See generally*, Mem. Supp. Mot. Summ J. (Dec. 7, 2020) (Doc. 24). However, the record evidence affirmatively shows that Forrest County failed to promptly reemploy Mr. Bailey following his military service, as required by USERRA. At the very least, the record evidence raises a genuine issue of material fact, which "is the exclusive province of the trier of fact and may not be decided at the summary judgment stage." *Renfroe*, 974 F.3d at 599.

### 1. Forrest County was Mr. Bailey's employer.

Forrest County claims that it was not in violation of USERRA because it had no control over Mr. Bailey's prior position on the HIDTA Task Force. Mem. Supp. Mot. Summ. J. 9. According to Forrest County, it was not Mr. Bailey's employer because he was under the direct supervision of the DEA supervisory personnel assigned to the task force. *Id.* at 8. Forrest County's argument is specious at best, however, as USERRA clearly and unambiguously defines an employer as "any person, institution, organization, or other entity that *pays salary or wages* for work performed *or* that has control over employment opportunities, including a person, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities." 38 U.S.C. § 4303(4)(A) (emphasis added). While it may be true that Mr. Bailey was under the direct supervision and control of the DEA supervisory personnel assigned to the task force, he was still a Forrest County Sheriff's deputy while he was assigned to the task force, and the Forrest County Sheriff could have removed him from the task force at any time. *See* Bailey Dep. at 96:9-14. Furthermore, Forrest County was the entity that paid Mr. Bailey the entire time he was on the HIDTA Task Force. *See* Forrest Cnty. Payroll Rep.; Bailey Personnel File, Forrest Cnty. Payroll Gross Wages Distrib. Rep. at 1-5. Under those circumstances, both Forrest County and the DEA supervisory personnel assigned to the HIDTA Task Force satisfy the definition as Mr. Bailey's employer. See 20 C.F.R. § 1002.37 ("Under USERRA, an employer includes *not only* the person or entity that pays an employee's salary or wages, *but also* includes a person or entity that has control over his or her employment opportunities, including a person or entity to whom an employer has delegated the performance of employment-related responsibilities." (emphasis added)). *See also*, *McDaniel v. Loyola Univ. Med. Ctr.*, 317 F.R.D. 72, 78 (N.D. Ill. 2016) (USERRA's definition of "employer" is broad enough to allow the

possibility that Plaintiff has multiple employers). As a result, Forrest County's argument that it was not Mr. Bailey's employer under USERRA is without merit.

**2. Forrest County's argument that it had a legitimate non-discriminatory reason for removing Mr. Bailey from the HIDTA Task Force is speculative.**

Forrest County argues that Mr. Bailey cannot show that Forrest County is liable for discrimination under 38 U.S.C. § 4311(a) because Mr. Bailey was removed from the HIDTA Task Force for a legitimate non-discriminatory reason, and he would have been removed despite Mr. Bailey's military service obligation. Mem. Supp. Mot. Summ. J. 11. According to Forrest County, Mr. Bailey was removed from the HIDTA Task Force because of his alleged insubordination while on a phone call with his DEA supervisor, Steve Riley. *Id.* at 11-12. *See also*, Riley Affidavit ¶ 4 (Nov. 10, 2020) (Mot. Summ. J. Ex. C) (Doc. 23-3) (hereinafter, "Riley Aff."). Forrest County asserts that because the phone call prompted Mr. Riley to express that he did not want Mr. Bailey back on the task force when Mr. Bailey returned from his military service, Mr. Bailey's removal from the task force was imminent, despite his deployment. *See* Mem. Supp. Mot. Summ. J. 12-13. However, Forrest County's argument is pure conjecture. The phone call at issue did not occur until *after* Mr. Bailey was on active duty, *see id.* at 12; Riley Aff. ¶ 4, and there is no evidence that Mr. Riley was considering removing Mr. Bailey from the task force before Mr. Bailey received active duty orders. Conversely, because the phone call took place while Mr. Bailey was on active duty, there is no evidence to suggest that the alleged insubordination would have occurred had he not been absent from the FCSO because of his military service. Thus, Forrest County's argument, as well as the evidence at bar, do not support its contention that it had a legitimate non-discriminatory reason for removing Mr. Bailey from the HIDTA Task Force. At the very least, this is a disputed issue of material fact.

### 3. Mr. Bailey was not reemployed in a position of like seniority, status, and pay.

Forrest County asserts that although it did not return Mr. Bailey to the HIDTA Task Force, it satisfied USERRA's requirement to reemploy Mr. Bailey "in the position of employment in which [he] would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, or a position of like seniority, status and pay, the duties of which the person is qualified to perform," by placing him in a position of like seniority and status as an investigator. Mem. Supp. Mot. Summ. J. 14. However, Forrest County did not *promptly* reemploy Mr. Bailey to a position of like seniority and status, and upon reemployment, Forrest County failed to provide the total pay to Mr. Bailey that he earned prior to his military service. Further, Forrest County failed to restore "other rights and benefits determined by seniority that [Mr. Bailey] had on the date of the commencement of service in the uniformed services." *See* 38 U.S.C. 4316(a).

### a. Forrest County failed to *promptly* return Mr. Bailey to a position of like status and seniority.

USERRA provides that servicemembers called away to military service "shall be promptly reemployed" by their former employers upon discharge. 38 U.S.C. § 4313(a). *See also*, *Serricchio v. Wachovia Secs., L.L.C.*, 658 F.3d 159, 180 (2d Cir. 2011). "'Prompt reemployment' means as soon as practicable under the circumstances of each case," but "[a]bsent unusual circumstances reemployment *must* occur within two weeks of the employee's application for reemployment." 20 C.F.R. § 1002.181 (emphasis added).

Forrest County claims that "within a few weeks of Plaintiff's return, it placed Plaintiff in a position of like seniority and status as an investigator." Mem. Supp. Mot. Summ. J. 14. However, it is undisputed that Mr. Bailey was placed in a patrol position upon his return. *Id. See also*, McGee Aff. ¶ 8; Bailey Dep. 59:13-22. It was not until after the Employer Support of the Guard and

Reserve ("ESGR") informed Sheriff McGee of "certain laws applying to military personnel" that he "told Mike Rials to offer Bailey an investigator position once Jaron Guy returned from the police Academy," but that did not happen until late 2018. McGee Aff. ¶ 10. In fact, Mr. Bailey testified that he was in a patrol position for three months, from November 2018 to January 2019. Bailey Dep. 64:9-14. Because Forrest County did not return Mr. Bailey to an investigator's position until three months after he returned, it failed to *promptly* return Mr. Bailey to a position of like status and seniority, which is a violation of USERRA.

### b. Forrest County did not return Mr. Bailey to a position of like pay.

Although Mr. Bailey was ultimately assigned to an investigator's position, that position did not come with the pay and "other rights and benefits" Mr. Bailey was afforded while assigned to the HIDTA Task Force. Specifically, he did not receive the overtime pay that came with the task force position. *See* Bailey Dep. 62:21-63:5 ("they put me back to my pay that I was having minus the benefits of overtime"). *See also*, Forrest Cnty. Payroll Rep.; Bailey Personnel File, Forrest Cnty. Payroll Gross Wages Distrib. Rep. at 1-5. As a related consequence, Forrest County's matching contribution to Mr. Bailey's retirement account was less than it would have been if Mr. Bailey was assigned to the task force. *See id.* Further, Mr. Bailey testified that while he was in the patrol position, he did not get any of the amenities allotted to an investigator, such as a clothing allowance. Bailey Dep. at 65:24-66:7. Even after he was allowed to work as an investigator, FCSO kept Mr. Bailey in a patrol position, *id.* at 66:6-13, and he never received a clothing allowance or any other amenities of the investigator position, *id.* at 67:14-16.

The commentary to USERRA's regulations provides that the servicemember is entitled to "*any compensation*, *in whatever form*, that the employee would have received with reasonable certainty if he or she had remained continuously employed." Unif. Servs. Emp. Reemp. Rights Act

of 1994, 70 Fed. Reg. 75,246, 75,278 (Dec. 19, 2005). Thus, pay to which the employee may be entitled could include not just a basic wage but also bonuses, travel expenses, drawing accounts, commissions, etc. *See Serricchio*, 658 F.3d at 183-85 (2d Cir. 2011) (quoting favorably Department of Labor's interpretation under prior reemployment law that "[t]he 'pay' protected under the statutes includes all elements of pay, such as traveling expenses, drawing accounts, hourly rates, piece rates, bonuses, etc."). Specifically, "It must be borne in mind that the courts look to the *actual pay* accorded the ex-serviceman, not the technical pay terms of his job." *Id.* (emphasis in original). "Likewise, piece rates or hourly rates in a job yielding less total pay than the former position will not effect compliance, notwithstanding the job is of 'like' seniority and status, and *the rates are identical* to those of the former job." *Id.* (emphasis in original).

While it is true that FCSO eventually provided Mr. Bailey the same *rate of pay* he received prior to his military service, his reemployment position yielded *less total pay* than his former position, which also affected the amount of his retirement contributions. In addition, Forrest County failed to provide Mr. Bailey with "other benefits" of the position he had prior to his military service, such as a clothing allowance. These are prima facie violations of USERRA.

    **c. Forrest County could not refuse to reemploy Mr. Bailey on the basis that another employee had been assigned to his position.**

In *Fryer v. A.S.A.P. Fire and Safety Corporation, Inc.*, the plaintiff returned home after serving in Iraq to find that his preservice position inspecting, servicing, and selling sprinkler systems was no longer available. 680 F.Supp.2d 317, 319 (D. Mass. 2010). The employer asserted that there were no openings because during the plaintiff's deployment, it hired another person to fill plaintiff's position. *Id.* at 321. Although he was eventually rehired, the new position lacked certain benefits of his preservice position. *Id.* at 319. Among other things, the hourly pay was similar, but the new position lacked the opportunity to make commissions. *Id.* at 322. In finding

that the employer violated USERRA by failing to reemploy the plaintiff in "a position of like seniority, status, and pay," the court noted that "the employer may not, however, refuse to reemploy the employee on the basis that another employee was hired to fill the reemployment position during the employee's absence, even if reemployment might require the termination of that replacement employee." *Id.* at 326 (quoting 20 C.F.R. § 1002.139(a)). *See also*, *Murphree v. Commc'ns Techs., Inc.*, 460 F.Supp.2d 702, 704 & 710 (E.D. La. 2006) (rejecting defendant's argument that "the hiring of a replacement employee on a permanent basis constitutes changed circumstances.").

*Fryer* is analogous to Mr. Bailey's claim, and the court's analysis in *Freyer* is instructive. As in *Fryer*, an explanation advanced by Forrest County for not returning Mr. Bailey to the HIDTA Task Force was that he returned to the FCSO unexpectedly, and a Reserve Deputy, "Seth" Brewer, was assigned to fill the task force position. *See* Riley Aff. ¶ 5-6. Likewise, when Mr. Bailey requested to be assigned to Metro Narcotics ("Metro"), which was similar in seniority and status, but not pay, to the task force position, Mr. Bailey was told that Metro did not have any open slots because another deputy, Nate Robertson, had recently been promoted from a patrol position to Metro. Mem. Supp. Mot. Summ. J. 13; McGee Aff. 8. As a result, Mr. Bailey was assigned to a patrol position to replace Nate Robertson. *Id. See also*, Bailey Dep. 94:19-24. But Forrest County cannot refuse to reemploy Mr. Bailey on the basis that another employee was selected to fill his position during his absence. *Fryer*, 680 F.Supp.2d at 326.

Thus, Forrest County failed to reemploy Mr. Bailey in the position of employment in which he would have been employed if his continuous employment with FCSO had not been interrupted by his military service, or in a position of like seniority, status, and pay that Mr. Bailey was qualified to perform, and Forrest County's argument to the contrary is unavailing.

4. **Damages.**

Forrest County argues that Mr. Bailey does not have any damages because FCSO rehired Mr. Bailey as soon as he requested to return, and he was given a position of like seniority, status, and pay. Mem. Supp. Mot. Summ. J. 15. As discussed above, however, Mr. Bailey was not returned to a position of like seniority, status, and pay. In particular, Mr. Bailey did not receive the overtime pay that he earned when he was assigned to the HIDTA Task Force. Bailey Dep. 62:21-63:5; Forrest Cnty. Payroll Rep.; Bailey Personnel File, Forrest Cnty. Payroll Gross Wages Distrib. Rep. at 1-5.

Further, Forrest County's failure to reemploy Mr. Bailey in "a position of like seniority, status and pay" was willful, subjecting Forrest County to liquidated damages under 38 U.S.C. § 4323(d)(1)(C). A violation of USERRA is willful "if the employer either knew or showed reckless disregard for whether its conduct was prohibited by the Act." *Harwood v. Am. Airlines, Inc.*, 963 F.3d 408, 418 (4th Cir. 2020) (quoting 20 C.F.R. § 1002.312(c)). For example, if an employer ignores an employee's request for reemployment or fails to attempt to comply with the law, the employer's actions might be willful. *See Serricchio*, 658 F.3d at 191. Here, Forrest County was at least put on notice when the ESGR informed Sheriff McGee "of certain laws applying to military personnel," McGee Aff. ¶ 9, yet Forrest County failed to promptly return Mr. Bailey to a position of like seniority, status, and pay. Forrest County's failure to comply with its USERRA obligations even after receiving notice of those obligations from the ESGR demonstrates "reckless disregard for whether its conduct was prohibited by the Act." As a result, Forrest County is subject to liquidated damages, as well as any loss of wages or benefits suffered by reason of its failure to comply with USERRA.

**Conclusion**

The record evidence conclusively shows that (1) Forrest County was Mr. Bailey's employer under USERRA, (2) Forrest County did not have a legitimate non-discriminatory reason for removing Mr. Bailey from the HIDTA Task Force, (3) Forrest County failed to promptly reemploy Mr. Bailey in a position of like seniority, status, and pay when he returned from his active military service, and (4) that Mr. Bailey suffered damages as a result, and is entitled to liquidated damages under 38 U.S.C. § 4323(d)(1)(C). At the very minimum, the record evidence raises a genuine issue of material fact, and Forrest County is not entitled to judgment as a matter of law.

WHEREFORE, Plaintiff, Rafael Bailey, respectfully requests that this Court enter an order denying Defendant's Motion for Summary Judgment, and for such further relief as the law will allow and the nature of the case may permit.

Respectfully submitted,

/s/ *Robert T. Vorhoff*
Robert T. Vorhoff (Pro Hac Vice)
Brian J. Lawler (Pro Hac Vice)
Louis H. Watson, Jr.  (MB# 9053)
*Attorneys for Plaintiff*

PILOT LAW, P.C.
850 Beech Street, Suite 713
San Diego, CA 92101
Telephone:     (619) 255-2398
Facsimile:     (619) 231-4984
Email: blawler@pilotlawcorp.com
            rvorhoff@vorhoff-legal.com

WATSON & NORRIS, PLLC
1880 Lakeland Drive, Suite G
Jackson, Mississippi 39216-4972
Telephone:     (601) 968-0000
Facsimile:     (601) 968-0010

Email: louis@watsonnorris.com
nick@watsonnorris.com

## **CERTIFICATE OF SERVICE**

I, Robert T. Vorhoff, attorney for Plaintiff, do hereby certify that I have this day filed via CM/ECF a true and correct copy of the above and foregoing document which will serve all counsel of record.

SO CERTIFIED, this 19th day of January, 2021.

*/s/ Robert T. Vorhoff*
Robert T. Vorhoff (Pro Hac Vice)