IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**RAFAEL BAILEY**                                                                                         **PLAINTIFF**

**v.**                                  **CIVIL ACTION NO. 2:20-CV-16-KS-MTP**

**FORREST COUNTY, MISSISSIPPI**                                    **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

For the reasons provided below, the Court **denies** Defendant's Motion for Summary Judgment [23] and **denies as moot** Plaintiff's Motion for Leave to File Sur-Reply [32].

### I. BACKGROUND

Plaintiff, a member of the Mississippi Army National Guard, was employed by Defendant in the Forrest County Sheriff's Office and assigned to the Department of Justice's "High Intensity Drug Task Force" ("HIDTA"), which included officers from several local agencies and municipalities under supervision by officers from the Drug Enforcement Administration ("DEA"). In early 2018, Plaintiff received orders for a thirteen-month deployment on active military duty, and he was deployed to Kuwait in the spring of 2018. However, Plaintiff returned home earlier than anticipated because of a medical issue in October 2018.

When Plaintiff returned, Defendant continued to employ him at the Sheriff's Office, but he was not assigned to HIDTA. Plaintiff alleges that the new position paid less than what he made on the task force. Therefore, he contends that Defendant

discriminated against him because of his military service obligations by altering the benefits of his employment, altering his duties, refusing to reemploy him in the same position, and reducing his compensation in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). He filed this lawsuit, seeking compensatory and liquidated damages, as well as attorney's fees and expenses. Defendant filed a Motion for Summary Judgment [23].

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding

whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### III. DISCUSSION

Two sections of USERRA are applicable to this case, each creating its own "distinct cause[ ] of action." *Bradberry v. Jefferson County, Tex.*, 732 F.3d 540, 545 (5th Cir. 2013). Plaintiff cited both sections in his Complaint, but Defendant made no distinction between each cause of action in briefing. The Court will address Defendant's arguments with respect to each one, as applicable.

#### A.     *Discrimination – 38 U.S.C. § 4311*

First, Plaintiff claims that Defendant discriminated against him because of his military service obligations. Section 4311 "concerns discrimination against those in the military when making employment decisions." *Id.* "The burden for a plaintiff in a Section 4311 claim is to prove that military status was a motivating factor in the employer's actions." *Id.* at 551 (citing 38 U.S.C. § 4311(c)(1)). Military status is a "motivating factor" if "one reason for the employer's actions was [the plaintiff's] membership, application for membership, service, application for service, or obligation for service in the uniformed services." *Id.* An adverse employment action

3

"can appear throughout the employment continuum, from consideration for hiring to employee termination." *Id.* at 547. However, the employer "is not liable under USERRA if it can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service." *Id.* at 545.

First, Defendant argues that it had no control over whether Plaintiff was put back on the task force, and, therefore, that it was not his "employer" with respect to that position. Under USERRA, "'[e]mployer' . . . means any person, institution, organization, or other entity that pays salary or wages for work performed, or that has control over employment opportunities, including . . . a person, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities . . . ." 38 U.S.C. § 4303(4)(A); *see also* 20 C.F.R. § 1002.5(d)(1). Federal courts have construed this definition liberally. *Garcia v. Spring Ind. Sch. Dist.*, 2020 WL 8299810, at *1 (S.D. Tex. Mar. 17, 2020). In fact, USERRA should generally be "broadly construed to prevent discrimination of service members." *Carder v. Cont'l Airlines, Inc.*, 636 F.3d 172, 177 (5th Cir. 2011); *see also Chance v. Dallas County Hosp. Dist.*, 176 F.3d 294, 297 n. 14 (5th Cir. 1999).

Therefore, "more than one entity may qualify as an 'employer' of the same employee." *White v. United Airlines, Inc.*, --- F.3d ---, 2021 WL 364210, at *8 (7th Cir. Feb. 3, 2021). For example, the Seventh Circuit has noted that a parent corporation may qualify as an "employer" of its subsidiary's employee if it pays "salary or wages

4

for work performed or [has] control over employment opportunities." *Id.* at *8 (quoting 38 U.S.C. § 4303). "The text of section 4303(4)(A)(i) does not require that an 'employer' have direct control over the matters that constitute a USERRA violation; it says only that the employer must have control over the plaintiff's employment opportunities writ large." *Id.*

Under the plain language of the statute and supporting regulations, an "employer" can be either the one who makes the employment decision, or the one who signs the paycheck. Here, Plaintiff presented evidence that Defendant paid his salary and wages. *See* Exhibit 1-B to Response at 4, *Bailey v. Forrest County*, No. 2:20-CV-16-KS-MTP (S.D. Miss. Jan. 19, 2021), ECF No. 28-1. Defendant argues that although it paid Plaintiff's wages, the Mississippi Bureau of Narcotics ("MBN") reimbursed it for Plaintiff's overtime. *See* Exhibit B to Motion for Summary Judgment at 95-97, *Bailey v. Forrest County*, No. 2:20-CV-16-KS-MTP (S.D. Miss. Dec. 7. 2020), ECF No. 23-2. Regardless, it is undisputed that Defendant cut the checks, and that MBN did not reimburse it for Plaintiff's base salary.

This case is similar to an example provided in the regulatory guidance, in which a guard is employed by a security company, assigned to a work site, and answers to both the security company and site owner. 30 C.F.R. § 1002.37. In that situation, "both employers share responsibility for compliance with USERRA." *Id.* Likewise, Plaintiff was employed by Forrest County and detailed to a task force supervised by the DEA. It appears to be undisputed that Plaintiff answered to both

5

the Forrest County Sheriff and the DEA task force's supervisor. Accordingly, the Court finds that Defendant was Plaintiff's "employer," as defined by USERRA.

Next, Defendant argues that there was a legitimate, nondiscriminatory reason for Plaintiff's removal from the HIDTA task force. Defendant presented an affidavit from Steve Riley, the DEA Group Supervisor over the HIDTA task force. Exhibit C to Motion for Summary Judgment at 1, *Bailey v. Forrest County*, No. 2:20-CV-16-KS-MTP (S.D. Miss. Dec. 7, 2020), ECF No. 23-3. Riley said that he "had to counsel [Plaintiff] on numerous occasions for incidents that [he] was involved with which were against HIDTA/DEA policies and procedures." *Id.* According to Riley's affidavit, that is why the DEA officials requested that Plaintiff not be reassigned to the task force. *Id.* at 2. Defendant also presented an affidavit from former Sheriff Billy McGee, who said that "Riley informed [him] that he did not want [Plaintiff] to return to the HIDTA Task Force due to his difficulties in dealing with [Plaintiff] which included insubordination and disruptions." Exhibit F to Motion for Summary Judgment at 2, *Bailey v. Forrest County*, No. 2:20-CV-16-KS-MTP (S.D. Miss. Dec. 7, 2020), ECF No. 23-6.

However, Defendant also presented an e-mail from Riley to Plaintiff from August 2018 – well into Plaintiff's deployment and after these purported incidents – in which Riley informed Plaintiff that another officer had replaced him for the duration of the deployment. Exhibit D to Motion for Summary Judgment at 1, *Bailey v. Forrest County*, No. 2:20-CV-16-KS-MTP (S.D. Miss. Dec. 7, 2020), ECF No. 23-4.

6

Riley specifically represented to Plaintiff: "Once [the replacement's] year is up we will be glad to have you back (if interested)." *Id.* This e-mail casts doubt on Defendant's assertion that the DEA supervisor wanted Plaintiff off the task force because of the alleged past incidents. Accordingly, the Court finds that there is a genuine dispute of material fact as to whether there was a legitimate, nondiscriminatory reason for Plaintiff's removal from the task force.[1]

### B.     *Reemployment – 38 U.S.C. §§ 4312, 4313*

Section 4312 generally "provides Reservists the right to reemployment when their absence from a position of employment is necessitated by reason of service in the uniformed services." *Bradberry*, 732 F.3d at 545 (quoting 38 U.S.C. § 4312(a)). An employee "entitled to reemployment under section 4312, upon completion of a period of service in the uniformed services, shall be promptly reemployed in a position of employment." 38 U.S.C. § 4313.[2]  "[I]n the case of a person whose period of service in the uniformed services was for more than 90 days," the employee must be promptly reemployed

> (A) in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, or a position of like

---

[1] Defendant also argued in reply that Plaintiff had not presented evidence that the failure to reassign him to the task force was motivated by "antimilitary animus." Plaintiff is not required to prove "antimilitary animus." Rather, Plaintiff is required to prove that his "military status was a motivating factor in the employer's actions." *Bradberry*, 732 F.3d at 551. To the extent Defendant argues in reply that Plaintiff has no evidence of such motivation, the Court does not address arguments raised for the first time in reply. *Wallace v. County of Comal*, 400 F.3d 284, 292 (5th Cir. 2005).

[2] The employee must also provide notice in compliance with the statute, but Defendant has not argued that Plaintiff failed to provide notice.

7

> seniority, status and pay, the duties of which the person is qualified to perform; or
>
> (B) in the position of employment in which the person was employed on the date of the commencement of the service in the uniformed services, or a position of like seniority, status and pay, the duties of which the person is qualified to perform, only if the person is not qualified to perform the duties of a position referred to in subparagraph (A) after reasonable efforts by the employer to qualify the person.

38 U.S.C. § 4313(a)(2). An "employee is not required to prove that the employer discriminated against him or her because of the employee's uniformed service in order to be eligible for reemployment." *Bradberry*, 732 F.3d at 547 (quoting 20 C.F.R. § 1002.33).

Once again, Defendant argues that it was not Plaintiff's "employer" with respect to the HIDTA task force position. The Court rejects this argument for the same reasons provided above.

Defendant also argues that Plaintiff was promptly reemployed in a position of like seniority, status, and pay. The Supreme Court has compared USERRA's reemployment provision to an escalator: "[A] returning service member 'does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war.'" *Rogers v. San Antonio*, 392 F.3d 758, 763 (5th Cir. 2004) (quoting *Fishgold v. Sullivan Drydock & Repair Co.*, 328 U.S. 275, 284-85, 66 S. Ct. 1105, 90 L. Ed. 1230 (1946)). This "escalator principle applies to the employment position, and rate of pay, as well as the seniority rights to which the returning service member is entitled." *Id.*

> Thus, USERRA requires that the service member be reemployed in the escalator job position comparable to the position he would have held had he remained continuously in his civilian employment. . . . If the service was longer than 90 days, the service member is entitled to reemployment in the escalator position, but the employer may also reinstate the member in any position of like seniority, status, and pay for which he is qualified. If the service member is unable to qualify for either the escalator position or a comparable position, despite reasonable employer efforts, he is entitled to reemployment in a position that is the nearest approximation to the escalator position.

*Id.* (citations and punctuation omitted).

Defendant presented evidence that the Sheriff initially "placed [Plaintiff] in patrol" because the Department was "short-staffed," but that the Sheriff eventually gave Plaintiff his previous salary. Exhibit F [23-6], at 2. According to Sheriff McGee, the DEA supervisor didn't want Plaintiff on the task force, and there was no position available in Metro Narcotics because someone else had recently been promoted. *Id.* In late 2018, McGee moved Plaintiff to the investigations division of the Sheriff's Department. *Id.* at 3. McGee claims:

> A criminal investigator position is of like seniority, status, and pay to a metro narcotics officer. The duties of a metro officer and investigator are similar in that they both investigate, conduct surveillance, collect evidence, etc. The minimal difference is that metro narcotics officers investigate crimes involving narcotics while criminal investigators investigate all other crimes within Forrest County. Furthermore, Forrest County Sheriff's Office has never been a place that implements a seniority system. Officers are promoted based on merit.

*Id.*

In response, Plaintiff first argues that Defendant did not *promptly* return him to a position of like seniority, status, or pay in that he was initially assigned to patrol.

"'Prompt reemployment' means as soon as practicable under the circumstances of each case." 20 C.F.R. § 1002.181. However, "[a]bsent unusual circumstances, reemployment must occur within two weeks of the employee's application for reemployment." *Id.*

It appears to be undisputed that Plaintiff was on patrol for over five weeks before Defendant put him in an investigator position, and Defendant has not provided any explanation as to why Plaintiff could not have been immediately placed in an investigator position. Federal courts have found that shorter time periods than this were insufficiently prompt to satisfy USERRA's reemployment provision. *See, e.g. Petty v. Met. Gov't of Nashville-Davidson County*, 538 F.3d 431, 444 (6th Cir. 2008); *Mace v. Willis*, 259 F. Supp. 3d 1007, 1018 (D. S.D. 2017); *Davis v. Crothall Servs. Group, Inc.*, 961 F. Supp. 2d 716, 734-35 (W.D. Penn. 2013). Therefore, the Court finds that there is a genuine dispute of material fact as to whether Defendant promptly reemployed Plaintiff in a position of like seniority, status, and pay.

Plaintiff also argues that the new position did not come with the same pay and other benefits that he received while assigned to the task force. Specifically, Plaintiff testified that he received more overtime and a clothing allowance while on the task force, but not in the patrol position or in investigations. Exhibit A to Motion for Summary Judgment at 17-18, *Bailey v. Forrest County*, No. 2:20-CV-16-KS-MTP (S.D. Miss. Dec. 7, 2020), ECF No. 23-1. Additionally, as explained below, the record contains evidence that Defendant paid Plaintiff less, on average, after he returned

from deployment. Therefore, there is a genuine dispute of material fact as to whether Defendant reemployed Plaintiff in a position of like pay.

## C. *Damages*

Next, Defendant argues that Plaintiff suffered no damages. Defendant contends that Plaintiff was paid the same base salary upon his return from active duty. Plaintiff testified – and Defendant admitted in briefing – that for a brief time while on patrol duty he was paid at the lower base salary of a patrol officer. *Id.* at 17. Plaintiff also testified that after Defendant raised his base salary he still didn't get as much overtime as he had on the task force, *id.* at 17, although he admitted that some positions in the Forrest County Sheriff's Office are eligible for overtime, at the Sheriff's discretion. *Id.* at 22.

Plaintiff's payroll records demonstrate that he clearly made more money before he was deployed than he did after he returned. The following were Plaintiff's paychecks for roughly a year before he deployed:

| Date | Wages | Date | Wages |
|---|---|---|---|
| 5/4/2017 | $3,686.94 | 11/16/2017 | $1,704.80 |
| 5/18/2017 | $2,248.29 | 11/30/2017 | $1,896.62 |
| 6/1/2017 | $1,960.56 | 12/14/2017 | $3,111.48 |
| 6/15/2017 | $1,704.80 | 12/28/2017 | $1,704.80 |
| 6/29/2017 | $1,960.56 | 1/11/2018 | $1,704.80 |
| 7/13/2017 | $1,992.53 | 1/25/2018 | $1,811.35 |

11

| Date | Wages | Date | Wages |
|---|---|---|---|
| 7/27/2017 | $2,472.08 | 2/8/2018 | $2,344.20 |
| 8/10/2017 | $2,599.96 | 2/22/2018 | $1,704.80 |
| 8/24/2017 | $3,303.30 | 3/8/2018 | $1,704.80 |
| 9/7/2017 | $2,376.17 | 3/22/2018 | $1,704.80 |
| 9/21/2017 | $2,205.64 | 4/5/2018 | $1,704.80 |
| 10/5/2017 | $2,120.41 | 4/19/2018 | $1,704.80 |
| 10/19/2017 | $2,088.44 | 5/3/2018 | $1,704.80 |
| 11/2/2017 | $2,536.02 | 5/17/2018 | $1,704.80 |
| **Total: $59,467.35** | | **Average per pay period: $2,123.83** | |

Exhibit B [23-2], 4-5. In comparison, Defendant paid Plaintiff less, on average, after his deployment:

| Date | Wages | Date | Wages |
|---|---|---|---|
| 11/15/2018 | $1,790.04 | 3/21/2019 | $2,028.22 |
| 11/29/2018 | $1,790.04 | 4/4/2019 | $1,870.40 |
| 12/13/2018 | $1,790.04 | 4/18/2019 | $1,870.40 |
| 12/27/2018 | $1,790.04 | 5/2/2019 | $1,870.40 |
| 1/10/2019 | $1,844.00 | 5/16/2019 | $1,870.40 |
| 1/24/2019 | $1,870.40 | 5/30/2019 | $1,870.40 |
| 2/7/2019 | $1,870.40 | 6/13/2019 | $1,870.40 |
| 2/19/2019 | $1,870.40 | 6/27/2019 | $1,870.40 |

| 3/7/2019 | $1,870.40 | |
|---|---|---|
| **Total: $31,606.78** | | **Average per pay period: $1,859.22** |

*Id.* at 5. Therefore, the Court finds that there is a genuine dispute of material fact as to whether Plaintiff suffered any damages.

Defendant also argued that Plaintiff is not entitled to liquidated damages because there is no evidence it willfully failed to promptly reemploy Plaintiff in a position of like seniority, status, and pay. A USERRA plaintiff may recover additional liquidated damages "equal to the amount of lost wages and benefits if the court determines that the employer's failure to comply with [USERRA] was willful[, meaning] the employer either knew or showed reckless disregard for whether its conduct was prohibited by [USERRA]." 20 C.F.R. § 1002.312; 38 U.S.C. § 4323(d)(1)(C).

The record contains evidence that Sheriff McGee was contacted by Employer Support of Guards and Reservists ("ESGR") and put on notice of Defendant's obligations under USERRA. Exhibit F [23-6], at 2. Despite this notice, Plaintiff was still paid less, on average, than he was before deployment, as demonstrated above. Therefore, the Court finds that there is a genuine dispute of material fact as to whether Defendant willfully violated USERRA.

### D.     *Reinstatement*

Finally, Defendant argues that it cannot reinstate Plaintiff to his former HIDTA position because it has no control over the task force. Plaintiff did not address

13

this argument in briefing, but he did not demand reinstatement in the operative pleading. *See* Complaint at 5, *Bailey v. Forrest County*, No. 2:20-CV-16-KS-MTP (S.D. Miss. May 29, 2019), ECF No. 1. Therefore, the Court denies this aspect of Defendant's motion as moot.

## IV. CONCLUSION

For these reasons, the Court **denies** Defendant's Motion for Summary Judgment [23]. The Court also **denies** Plaintiff's Motion for Leave to File Sur-Reply [32] **as moot**.

SO ORDERED AND ADJUDGED this 11th day of February, 2021.

                                          /s/     Keith Starrett
                                              KEITH STARRETT
                              UNITED STATES DISTRICT JUDGE